# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James Holderman | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6756 | **DATE** | 8/22/2003 |
| **CASE TITLE** | Christopher Pease vs. Production Workers of Chicago etal | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Report and Recommendation. The Court Recommends that Defendants' Motion in Limine (#37) and Motion for Protective Order (#32) be Granted in Part and Denied in Part. Discovery closes on 8/25/03. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices 3 | |
| | Notices mailed by judge's staff. | AUG 25 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 44 |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | |
| AC | courtroom deputy's initials | date mailed notice | |

CLERK U.S. DISTRICT COURT
03 AUG 22 PM 1:44

Date/time received in central Clerk's Office    mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER PEASE, VINCE VITI      )
WILLARD BARGE, and MIKE GEAR,      )
                         )
         Plaintiffs,      )    02 C 6756
                         )
vs.                      )    Judge James F. Holderman
                         )
PRODUCTION WORKERS OF CHICAGO    )    Magistrage Judge
AND VICINITY LOCAL 707, RANDALL  )    Arlander Keys
INDUSTRIES, INC. AND RANDALL     )
RENTS OF INDIANA,            )
                         )
         Defendants.     )

DOCKETED
AUG 2 5 2003

TO:   THE HONORABLE JAMES F. HOLDERMAN
      UNITED STATES DISTRICT JUDGE

### REPORT AND RECOMMENDATION

Currently before the Court are Defendant Production Workers of Chicago and Vicinity Local 707's (the "Union") Motion in Limine and Motion for a Protective Order. Plaintiffs, all current or former employees of Randall Industries, Inc. or Randall Rents of Indiana (collectively "Randall"), allege that the Union breached its duty of fair representation in handling their grievances against Randall. In support of this claim, Plaintiffs seek to introduce expert testimony to illuminate the Union's duty in this regard. For the reasons set forth below, the Court recommends that Defendants' Motions be granted in part and denied in part.

44

## RELEVANT BACKGROUND FACTS

Randall is an Illinois corporation engaged in both the wholesale and retail rental, sale, and service of aerial lift and other construction equipment. Randall has facilities located in Elmhurst, Illinois and Portage, Indiana.

The Union is a labor organization, which represents heavy equipment operators, and other affiliated employees, that service aerial lift and heavy equipment employers throughout northwest Indiana, northern Illinois, and northeast Iowa. Although the Union has represented Randall employees for years, the International Union of Operating Engineers, Local 150 ("Local 150") sought to organize the Randall employees and become their exclusive bargaining representative on more than one occasion. In 1999, Local 150 challenged the Union for exclusive representation of the Randall employees, and lost the election by an 8 to 1 margin. The National Labor Relations Board (the "NLRB") certified the Union as the Randall employees' exclusive bargaining representative. Shortly thereafter, Randall and the Union negotiated a collective bargaining agreement ("CBA"), which was executed on June 18, 1999.

In February of 2002, Local 150 sought to oust the Union and become the exclusive representative of the Randall employees. Plaintiffs were all employed by Randall at the time, and each openly supported Local 150 in its campaign against the Union.

Once again, the Union defeated Local 150 and was certified by the NLRB as the Randall employees' representative.

Following the election, Randall laid off or terminated three of the Plaintiffs. Plaintiffs complained that Randall took the adverse job actions in retaliation for Plaintiffs' open support of Local 150. Plaintiffs filed grievances with the Union, and sought the Union's support in pursuing their grievances. Plaintiffs allege that the Union failed to pursue their grievances in accordance with the terms of the CBA and breached its duty of fair representation to Plaintiffs.

## PROCEDURAL HISTORY

On September 20, 2002, Plaintiffs, with the assistance of Local 150, filed suit against Defendants, alleging breach of contract against Randall, and breach of the duty of fair representation against the Union. The case was assigned to Judge James F. Holderman. Defendants filed a joint motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the NLRB had exclusive jurisdiction over Plaintiffs' claims, and that Plaintiffs had failed to state claims upon which relief could be granted.

Judge Holderman dismissed Plaintiffs' claims relating to Section 8 of the National Labor Relations Act (the "NLRA"), which prohibits employers from interfering with restraining or coercing employees in the exercise of their NLRA rights. State and

3

federal courts lack subject matter jurisdiction over such claims. *Pease v. Production Workers Union Local 707 et al.,* No. 02 C 6756 (Jan. 10, 2003 Order) quoting *Vaca v. Sipes*, 386 U.S. 171, 179 (1967) ("as a general rule neither state nor federal courts have jurisdiction over suits directly involving 'activity (which) is arguably subject to §7 or §8 of the Act.'") *See also Communications Workers of AM. v. Beck,* 487 U.S. 735, 743 (1988) ("Employees, of course, may not circumvent the primary jurisdiction of the NLRB simply by casting statutory claims as violations of the union's duty of fair representation" or an employer's breach of contract.) However, the court denied Defendants' Motion with respect to the bulk of Plaintiffs' claims. The court conceded that Defendants' argument that Plaintiffs' breach of contract and fair representation claims were truly § 8 claims in disguise was strong, but found that Plaintiffs had sufficiently alleged a § 301 violation.

Plaintiffs filed their Amended Complaint on January 21, 2003. Judge Holderman referred the case to this Court on February 13, 2003, to supervise settlement and discovery. On August 5,2003, the instant motions were referred to this Court.

### Federal Rules of Evidence

Before addressing Defendants' Motions, the Court will set forth the Federal Rules of Evidence implicated in this matter.

4

### 1. Rule 702

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Courts should only admit expert testimony where "1) the testimony is based upon sufficient facts or data; 2) the testimony is the product of reliable principles and methods; and 3) the witness has applied the principles and methods reliably to the facts . . ." *Id.*

### 2. Rules 401 & 402

Relevant evidence is defined by the Federal Rules as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. This is a broad definition which allows background evidence to be "universally offered and admitted as an aid to understanding." FED. R. EVID. 401 advisory committee's note.

Relevant evidence contains two components: materiality and probative value. MCCORMICK, §185 at 773. Material evidence is that evidence which helps prove a matter at issue. *Id.* Probative value is the material evidence's ability to establish the proposition it is offered to prove, and that which helps

establish probability of a fact. *Id.* at 774. An example of the breadth of Rule 401's definition is that evidence which supports a provable fact will never be irrelevant. *Id.* However, any evidence that does not fit into this broad definition is irrelevant and will not be admissible at trial. FED. R. EVID. 402.

### 3. Rule 403

Rule 403 provides that evidence, though relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. An example of when evidence should be excluded occurs where it is likely to induce a jury decision on an emotional, as opposed to a legal, basis. FED. R. EVID. 403 advisory committee's note. In deciding whether or not to exclude evidence based on this Rule, consideration should be given to the possible effectiveness of a limiting instruction. FED. R. EVID. 403 advisory committee's note.

### DISCUSSION

The Union has filed two motions: a Motion in Limine, seeking to exclude expert testimony, and a Motion for a Protective Order, seeking to keep confidential certain discovery materials. The Court will discuss each Motion in turn.

## I.  MOTION IN LIMINE

The Union argues that the Court should prohibit Professor
Lorraine Schmall and Professor Robert Bruno from testifying about
standards governing a union's duty of fair representation, and
other related matters.

### A.    Standard for Motion in Limine

"In general, federal district courts have the power to
exclude evidence in limine pursuant to their inherent authority
to manage trials." *Farley v. Miller Fluid Power Corp.*, No. 94 C
2273, 1997 WL 757863, at *1 (N.D. Ill. Nov. 24, 1997)(citing *Luce
v. United States*, 469 U.S. 38, 41 n.4 (1984)).  A motion in
limine may be used to insulate the jury from potentially harmful
or unfairly prejudicial evidence.  MCCORMICK ON EVIDENCE, §52 at 202-
203 (4th ed. 1992).  However, a court is limited to excluding, in
limine, only such evidence that is clearly inadmissible on all
possible grounds.  *Farley*, 1997 WL 757863, at *1.  As a result,
"when admissibility determinations are not clear, evidentiary
rulings must be deferred until trial so questions of foundation,
relevancy, and prejudice can be resolved in their proper
context."  *Marlow v. Winston & Strawn*, No. 90 C 5715, 1994 WL
424124, at *1 (N.D. Ill. Aug. 11, 1994).

### B.  Professor Schmall's Expert Testimony

Plaintiffs seek to introduce the testimony of Professor
Lorraine Schmall regarding "the various factors relevant to a

7

union's duty of fair representation." Pl.s' Resp. to Def. Mot. in Limine at p 3.

The admissibility of expert testimony in federal court is governed by principles announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court emphasized the district court's gatekeeper role in deciding whether to admit scientific evidence, setting forth a nonexhaustive list of factors that make scientific evidence sufficiently reliable for admission. Specifically, the Court stated that evaluating falsifiability, peer review, rate of error, and general acceptance in the scientific community would assist a court in determining whether expert testimony is admissible under Federal Rule of Evidence 702. *Id.* at 593-94.

In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), the Court applied its *Daubert* analysis to nonscientific evidence. The *Kumho* Court explained that the test for reliability for nonscientific experts is "flexible," stating, rather cryptically, that "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case."

The Supreme Court's directives in *Daubert* and *Kumho* have generated confusion over what reliability standards courts should employ when deciding whether to admit nonscientific expert testimony. A number of courts have found that expert testimony

8

which is not amenable to the scientific method- i.e. nonscientific expert testimony -- should not be scrutinized under the standards set forth in *Daubert*. *See United States v. Hall*, 974 F. Supp. 1198, 1200 (N.D. Ill. 1997) (discussing cases)[1]. Although the Seventh Circuit has ruled that *Daubert* is appropriate for evaluating the admissibility of all types of expert testimony, *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263-64 (7th Cir. 1996), *Daubert* is applicable "only in the general sense that all expert testimony must be subjected to the strictures of Rule 702 'to be sure that the person possess genuine expertise in a field and that her court testimony adheres to the same standards for intellectual rigor that are demanded in [her] professional work.'" *Hall,* 974 F. Supp. at 1202 quoting *Tyus*, 102 F.3d at 263.

In the instant case, the Union does not challenge Dr. Schmall's experience, reliability[2], or methodology, but instead

---

[1] The *Hall* court considered the following factors when evaluating whether to admit "social science" expert testimony: 1) determining the reliability of the methods that scientists in that field make their findings; 2) whether the expert published and/or relied upon scholarly articles subject to peer review; 3) the longevity of the particular field, the amount of literature and peer review on the topic, and the general consensus as to what the data means; and 4) the expert's contribution to the field about which he or she is testifying. As noted above, however, Defendants do not challenge Plaintiffs' experts on these grounds.

[2] Defendants do argue bias on the part of Professor Schmall, but the bias is based upon her prior interaction(albiet brief) with defense counsel and her prior professional relationship with Plaintiffs' counsel. Defendants do not,

insists that the topic on which she will testify is so basic and straightforward, that expert testimony is simply not required to assist the jury in understanding the law. The Union points to Plaintiffs' argument in opposing Defendants' request to appoint a Special Master, where Plaintiffs conceded that their "complaints involve common contract disputes . . . . Such allegations are hardly too complicated for a jury to comprehend. Indeed, garden variety employment issues and [sic] likely one of the areas most jurors have experience with and can easily comprehend." Pls. Resp. to Defs. Motion for App't of a Special Master at pp 2-3.

Notably, neither at oral argument nor in their briefs were Plaintiffs able to cite even a single case in which a court found that expert testimony on a union's duty of fair representation was necessary or even useful to assist a jury. The Court's own independent research uncovered precious few cases where such testimony was admitted, and the reasoning of these courts was far from overwhelming. *See, e.g., Bowen v. United States Postal Service et al.,* 642 F.2d 79, 82 (4th Cir. 1981) *rev'd on other grounds* (ruling that admitting expert testimony on the standards governing a union's duty of fair representation was not reversible error, and stating that "even if error, it would be but harmless.")

---

however, argue that Professor Schmall's report evidences bias.

10

The Court acknowledges that parties frequently rely upon expert testimony in standard of care cases. Expert testimony is essentially required in legal malpractice cases, *see, American Int'l Adjustment v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("Expert testimony is crucial for defending as well as prosecuting a legal malpractice action"), and few parties go to trial in medical malpractice cases without relying upon the services of an expert witness. *Sullivan v. Edward Hospital,* 781 N.E.2d 649 (Ill. App.2d 2002) (noting that medical malpractice suits require the plaintiff to establish the standard of care through the testimony of a medical expert.)

However, legal or medical malpractice claims are far more complex than the issues raised in a breach of fair representation case. A union representative is frequently a grievant's coworker, and is not held to the same standards as an attorney. "A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190 (1967). *See also, Air Line Pilots Assoc. v. O'Neill,* 111 S.Ct. 1127, 1130 (1991) (conduct breaching the duty of fair representation must be "so far outside a 'wide range of reasonableness'" so that the action is arbitrary or irrational.) Mere negligence or ineptitude is not enough. *United Steelworkers of America v. Rawson,* 495 U.S. 362, 372 (1990).

Although "[t]he union must provide 'some minimal investigation of greivances,' . . .only an egregious disregard for union members' rights constitutes a breach of the union's duty." *Garcia v. Zenith,* 58 F.3d 1171, 1176 (7th Cir. 1994). Thus, a breach may occur where the union fails to follow its own procedures and inexplicably accepts an employer's position. *See Salmanis v. American Postal Workers Union,* 2001 WL 219650, at *5 (N.D. Ill. Mar. 6, 2001). Even Plaintiffs' own expert, Professor Schmall, explains that breaches of the duty of fair representation are most typically found when the accused union failed to make any investigation whatsoever, neglecting to even interview the complaining union member. *See* Prof. Schmall's Witness Report at pp. 14-17.

The question becomes, then, whether Professor Schmall's opinion on the applicable standard of care is useful to the jury. By the slightest of margins, the Court finds that Professor Schmall's testimony would not be useful in helping the jury understand whether the Union's conduct was so far outside a wide range of reasonableness as to be actionable. Judge Kennelly's discussion in *Dahlin v. Evangelical Child and Family Agency*, No. 01 C 1182, 2002 WL 31834881 (N.D. Ill. Dec. 18, 2002) is instructive.

In *Dahlin*, the plaintiffs, who were adoptive parents, sought to introduce expert testimony that an adoption agency's workers

failed to comply with a certain standard of care governing adoption agencies. *Id.* at *4. The court noted that the standard governing an adoption agency's duty to respond to adoptive parents' inquiries was well defined in caselaw: adoption agencies have a duty to provide "an honest and complete response to [the adoptive parents'] specific request concerning the characteristics of potentially adoptable children." *Id.* quoting *Roe v. Catholic Charities*, 588 N.E.2d 354, 365 (Ill. 1992). The court concluded that the plaintiffs' expert was "no more qualified than an ordinary juror to opine on whether [the adoption agency] was honest and complete. His opinion that [the adoption agency] breached this particular standard of care is not helpful to the jury and is therefore inadmissible with respect to the negligence claim." *Id.*

In the case at bar, Plaintiffs must demonstrate to the jury (presuming the case proceeds to a jury trial) that the Union acted arbitrarily, discriminatorily, or in bad faith. While jurors might not have significant experience in understanding whether a union acted negligently or ineptly when representing one of its members (thus warranting expert testimony), there is no indication that Professor Schmall is more adept at recognizing conduct that is so egregious - such as refusing to present a meritorious claim, or failing to interview a grievant -- that it can be characterized as a breach of a union's duty of fair

13

representation. *See Garcia,* 58 F.2d at 1176 (no breach where union did not interview or present the exculpatory testimony of an eyewitness).

A review of Professor Schmall's expert witness report further bolster's the Court's conclusion. Professor Schmall devotes nearly 15 pages of her 20 page report to setting forth blackletter caselaw on a union's duty of fair representation. Less than one page in the report discusses the Union's (alleged) deficiencies in this particular case, and it does so in very general and conclusory terms. The subject of Professor Schmall's testimony would be more properly conveyed to the jury through jury instructions. *See generally, Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 99-101 (1st Cir. 1997) (the judge, not an expert should instruct the jury as to the applicable law). Therefore, the Court finds that Professor Schmall's report and testimony should not be admitted.

## C. Professor Schmall's Alleged Bias

The Union insinuates that Professor Schmall should be prohibited from testifying, because of her prior communications with defense counsel and because of her professional relationship with Plaintiffs' counsel. Because the Union devotes considerable effort to the topic, the Court will address the issue, despite its prior finding on the inadmissibility of Professor Schmall's testimony.

14

A party seeking to disqualify an expert, based on that party's prior relationship with the expert, bears the burden of proving both that it reasonably believed that a confidential relationship existed and that it disclosed confidential information to the expert. *Popular, Inc. v. Popular Staffing Serv. Corp.*, 239 F. Supp.2d 150, 152 (D. P.R. 2003). In determining whether the party disclosed confidential information to the expert, a court should look to whether the party and the expert discussed trial strategies and the weaknesses on each side of pertinent issues, the role of the expert witness in the litigation, and anticipated defenses. *Id.* Disqualification is not appropriate when "'the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services.'" *Id.* quoting *Koch Ref Co. v. Jennifer L. Boudreaux MV,* 85 F.3d 1178, 1181 (5th Cir. 1996).

In the instant case, the Union's counsel, Mr. James W. Malloy, contacted Professor Lorraine Schmall on March 4, 2003, to discuss the possibility of Professor Schmall serving as the Union's expert witness in this case. In his affidavit, Mr. Malloy contends that Professor Schmall thought that an expert's testimony would not be necessary in a duty of fair representation case- responding "What for?," presumably to Mr. Malloy's request for her expert opinion on a union's duty of fair representation.

Notwithstanding, Professor Schmall forwarded her resume to Mr. Malloy on March 6, 2003, and expressed her interest in "the possibility of working with [Mr. Malloy.]" On March 14, 2003, Mr. Malloy informed Professor Schmall that her services would not be required.

Under these circumstances, the Court finds that disqualification would not be warranted. The Union has not presented any evidence that communications regarding the strengths and weaknesses of Defendants' case took place, or that it disclosed any confidential communications to Professor Schmall. While the Court is troubled by Mr. Malloy's insinuation that Professor Schmall intentionally misled him into believing that expert testimony was not required in this matter, the Union does not advance this as a basis for disqualifying Professor Schmall. Similarly, although the Union suggests that Professor Schmall's former professional affiliation with Plaintiffs' counsel is further evidence of her bias[3], the Union has not demonstrated that Professor Schmall's report is improper or biased. Therefore, if the Court were to have determined that Professor Schmall's testimony would have assisted the jury, it would not have disqualified her testimony based upon her

---

[3] Professor Schmall previously worked as an attorney for the law firm for which Plaintiffs' counsel worked prior to their employment as in-house counsel for Local 150.

16

communications with defense counsel, or her professional
relationship with Plaintiffs' counsel.

**D.  Professor Bruno's Testimony**

Plaintiffs also seek to introduce the expert testimony of
Professor Robert Bruno.  Once again, Defendants do not challenge
Professor Bruno's substantial credentials, his methodology, or
the reliability of his report.  Instead, Defendants seek to bar
his testimony on the grounds that Professor Bruno is simply
seeking to displace well established legal standards with his
opinions.

Plaintiffs argue that Professor Bruno's report and testimony
would assist the jury in "understanding the standards of care
used by unions throughout the industry in representing its
members, explaining contract negotiation, grievance and
investigation and preparation, and administration of those
grievances."  Pls' Resp. to Def's Mot. in Limine at p. 3.
Professor Bruno's expert report, however, divides his proposed
testimony into three separate categories: 1) the quality of the
negotiated grievance procedure; 2) the Union's investigation and
preparation of grievances; 3) the Union's administering of the
grievances.  The Court will first discuss Professor Bruno's
opinion with regard to the quality of the negotiated grievance
procedures, and then analyze the admissibility of his remaining
opinions.

17

In opining on the quality of the negotiated grievance procedure, Professor Bruno dissects the 1999 CBA, negotiated between the Union and Randall. Professor Bruno states that the CBA is deficient in four critical respects, and that these deficiencies undermined the legitimacy of the grievance process. However, any claim that the 1999 CBA is so deficient as to constitute a breach of the Union's duty of fair representation is time barred; the six month statute of limitations for such allegations passed in December of 1999. *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 172 (1983).

The Court rejects Plaintiffs' contention that Professor Bruno's testimony on this point should be admitted because it "illuminates a pattern of conduct on behalf of [the Union] amounting to its failure to represent its members," Pls'. Resp. to Defs'. Mot. at 3, as a weak attempt to circumvent the applicable statute of limitations. If Plaintiffs believed the CBA was so deficient as to constitute a failure to represent, they should have brought the claim in a more timely manner[4]. Plaintiffs do not allege or argue that the Union or Randall improperly withheld the CBA from them, or concealed those portions of the CBA that Professor Bruno highlights as deficient,

---

[4] The Court acknowledges that Plaintiffs were hired after the CBA was negotiated. Nevertheless, Plaintiffs presumably did not object to the CBA when they accepted employment with Randall, nor within six months after beginning their employment with Randall.

thereby extending the statute of limitations. *See Scott v. United Auto,* 242 F.3d 837, 839 (8th Cir. 2001) (the statute of limitations begins running when the employee 'should reasonably have known of the union's alleged breach.'" Having failed to challenge the CBA in a timely manner, the Court will not permit Plaintiffs to bootstrap this time barred claim onto the timely-filed claims set forth in their Amended Complaint.

Next, Professor Bruno offers his opinion on the Union's investigation and preparation of Plaintiffs' grievances, as well as the Union's administering (or prosecution) of the grievances. Professor Bruno relies upon his vast experience as an industrial relations expert to opine on the standards that most unions hold themselves to when investigating, preparing, and administering grievances. Professor Bruno comments extensively on typical union conduct in these regards, and compares and contrasts this with the Union's conduct in this case. For example, Professor Bruno's report states that, typically, evidence of a union investigation would appear in union notes and files, and would be shared with the grievant. Professor Bruno then notes that the Plaintiffs' files do not contain such notations, and do not include correspondence with the Plaintiffs regarding the investigation, as would be expected if a thorough investigation had been conducted.

The Court acknowledges that this testimony bears resemblance to Professor Schmall's proposed testimony on the law governing the applicable standard of care[5]. However, the Court agrees that the testimony differs in important respects. Whereas Professor Schmall's report was offered to set forth the blackletter law regarding the standard of care, Professor Bruno's report relies thoroughly on his vast experience as an industrial relations expert. More importantly, Professor Bruno's expert report informs the trier of fact about the significance of certain conduct on the part of the Union that might have otherwise escaped the jury's attention; Professor Bruno's discussion about the significance of documentation and correspondence in a grievant's file is just one such example.

Therefore, the Court finds that Professor Bruno's report would assist the jury in determining whether the Union's (alleged) repeated departures from customary business practices is sufficient to establish Plaintiffs' breach of fair representation claims.

---

[5] The Court is also mindful that the Federal Rules of Evidence do not favor duplicative testimony, absent good cause shown. *See Dahlin v. Evangelical Child and Family Agency,* No. 01 C 1182, 2002 WL 31834881, at *5 (N.D. Ill. Dec. 18, 2002) "Pursuant to the Court's authority under Federal Rule of Evidence 403, the Court finds that the needlessly cumulative effect of this duplication would substantially outweigh the probative value of the second expert." (noting that N.D. Ill. LR Form 16.1.1, fn7 provides that "[o]nly one expert witness on each subject for each party will be permitted to testify absent good cause shown.")

## II. PROTECTIVE ORDER

The Union also moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c)(4). The Union asks that 1) Plaintiffs be barred from inquiring about, or offering expert testimony on the topic of, the negotiation of the 1999 CBA; 2) that Professor Bruno be barred from testifying about the Union's handling of Plaintiffs' grievances; and 3) Plaintiffs be barred from disclosing the Union's trade secret information to Local 150, which employs Plaintiffs' attorneys as in-house counsel.

"As a general proposition, pretrial discovery must take place in. . . public unless compelling reasons  exist for denying the public access to the proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994).   Federal Rule of Civil Procedure 26(c) permits courts to issue protective order only "for good cause shown." Fed. R. Civ. P. 26(c).  In determining whether good cause exists, courts balance the public's interest in having access to the proceeding against the litigants' property and privacy interests. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).  "When the probative value of the information is significant and the privacy interest in the material can be protected by redaction, there is a presumption in favor of discovery." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 161 F.R.D. 355, 358 (N.D. Ill. 1995) (finding that balance

tipped against sealing documents because the privacy interest involved, which were significant, could be protected by redaction).

Thus, courts have found that the public's interest in accessing proceedings is trumped by a litigant's request for privacy where: 1) the litigants were not public figures/officials; 2) the suit did not involve issues of widespread public concern; and 3) the litigants sufficiently demonstrated that disclosure of their estate planning information, which was beyond the scope of the litigation, would anger their potential heirs and cause them harm and embarrassment. *See, e.g., United States v. Gaynor,* No. 01 C 4753, 2002 WL 411608, at*1-2 (N.D. Ill. Mar. 15, 2002).

Initially, the Court notes that it has already determined that testimony regarding the negotiation and contents of the 1999 CBA is inappropriate, because such a claim is barred by the applicable statute of limitations. Because the issue of the 1999 CBA is already off limits, the request for a protective order covering such information is moot.

Next, the Court finds that the Union's request that Plaintiffs be barred from presenting expert testimony concerning the Union's investigation and processing of grievances should be denied. The Union has failed to demonstrate good cause for suppressing this testimony. The Union does not argue that its

method of investigating and processing grievances is a trade secret, or that the disclosure of this information would somehow inflict injury or embarrassment upon the Union. In addition, this information is at the heart of Plaintiffs' claims and would likely be elicted at trial. Therefore, the Union's Motion with respect to this testimony is denied.

Finally, the Union asks that Plaintiffs, their attorneys, and their expert witnesses be ordered to refrain from disclosing information that has been and will be disclosed in discovery to others, most notably, Local 150 officials and personnel. This time, the Union has advanced an argument, albeit inartfully, that it stands to be harmed or embarrassed if confidential information disclosed during discovery is turned over to these entities.

It is quite apparent that Local 150 has a substantial behind the scenes role in this litigation. Plaintiffs supported Local 150 in the 2002 elections, Plaintiffs turned to Local 150 when they believed their grievances were given short shrift, and, apparently, Local 150 is supplying Plaintiffs with both its in-house counsel and funds to prosecute this case. Even Plaintiffs' counsel is confused as to who the true plaintiffs are in this case. In its Notice of Filing of the First Amended Complaint, Plaintiffs' counsel (who also serves as Local 150's in-house counsel) indicated that the document was filed as "Local 150's First Amended Complaint." Similarly, Plaintiffs' Response to

Defendants' Motion for a Protective Order is peppered with references to Local 150 and "Local 150's expert witness," Dr. Bruno. At oral argument, counsel reluctantly admitted that this lawsuit is being funded by Local 150.

The Union complains that Local 150 has been unrelenting in its effort to unseat the Union at Randall's facilities, noting that Local 150 complained of unfair labor practices (ie, that Randall and the Union had coerced intimidated employees into voting for the Union and against Local 150) on two occasions. On both occasions, the NLRB found that there was no evidence supporting Local 150's claims, and upheld the Union's election victory. The Union fears that Local 150 will attempt to manipulate this litigation in an effort to access confidential information about the Union, and use that information against the Union in the next election.

The Court finds that the Union's concerns appear to be well-founded. Unfortunately, however, the Union has failed to identify which documents, or what category of discovery contains confidential information or trade secrets worthy of protection. The Court declines to issue a blanket order of protection, covering all discovery in this case, as the Union has certainly not demonstrated that any or all of its disclosures warrant such protection. The Court recommends denying the Union's Motion without prejudice, and permitting the Union to identify the

confidential/trade secret information that it seeks to protect. In such event, an order could be fashioned whereby Plaintiffs' counsel (Local 150's counsel) would be prohibitted from sharing such information with Local 150.

## CONCLUSION

For the reasons set forth above, the Court recommends granting the Union's Motion in Limine with respect to Professor Schmall's testimony, and granting in part and denying in part the Motion in Limine to bar Professor Bruno's testimony. In addition, the Court recommends denying the Union's Motion for a Protective Order without prejudice.

DATED: August 22, 2003          RESPECTFULLY SUBMITTED:


ARLANDER KEYS
United States Magistrate Judge

Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable James F. Holderman. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

25