# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6756 | **DATE** | 11/7/2003 |
| **CASE TITLE** | PEASE et al vs. PRODUCTION WORKERS UNION LOCAL 707 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiffs' motion for summary judgment is granted as to Randall's affirmative defenses two, four, five, and six. Plaintiffs' motion for summary judgment is denied in all other respects. Defendants' motion for summary judgment is denied as to the claims raised by Pease, Berge, and Gear. Defendants' motion for summary judgment is granted as to Viti. All claims brought by plaintiff Viti are dismissed. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 10 2003 date docketed | |
| | Docketing to mail notices. | | | 115 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/7/2003 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher Pease, Vince Viti, Willard Berge, and Mike Gear, ) ) ) ) Plaintiffs, ) ) v. ) ) Production Workers Union of Chicago ) and Vicinity Local 707, Randall Industries, Inc., ) and Randall Rents of Indiana, ) ) Defendants. ) ) | | No. 02 C 6756 |

**DOCKETED**
**NOV 1 0 2003**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 21, 2003, plaintiffs Christopher Pease ("Pease"), Vince Viti ("Viti"), Willard Berge ("Berge"), and Mike Gear ("Gear") filed a four-count first amended complaint against defendants Production Workers Union of Chicago and Vicinity Local 707 ("Local 707"), Randall Industries, Inc., and Randall Rents of Indiana alleging breach of duty of fair representation and breach of contract claims under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. On September 23, 2003, all parties moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the reasons explained below, plaintiffs' motion is denied in part and granted in part, and defendants' motion is denied in part and granted in part.

1

115

## STATEMENT OF UNDISPUTED FACTS[1]

Defendant Randall Industries, Inc. is an Illinois corporation with facilities located in Elmhurst, Illinois. Defendant Randall Rents of Indiana is an Indiana corporation with facilities in Portage, Indiana. The businesses (collectively "Randall") are engaged in wholesale and retail sale and service of aerial lift and other construction equipment. From June 1, 1999, through May 31, 2002, Randall and Local 707 were parties to a "Labor Contract and Working Agreement" ("CBA"). All four plaintiffs were employed by Randall, and all four plaintiffs openly supported the International Union of Operating Engineers, Local 150, AFL-CIO in it February 2002 organizing campaign to represent Randall employees.

Plaintiff Pease worked as a truck driver at Randall's Elmhurst facility from August 14, 2000, to February 21, 2002, on which day he was terminated. On March 6, 2002, Local 707, on behalf of Pease, filed several grievances against Randall, one of which was that Pease was terminated in violation of the CBA. On July 10, 2002, after a hearing on June 25, 2002, Arbitrator Dennis Stoia determined that Randall did not violate the CBA when it terminated Pease.

Plaintiff Vince Viti worked as a mechanic at Randall's Elmhurst facility from the end of December 2001 to February 20, 2002, when he was terminated. Prior to working directly for Randall, Viti worked as a mechanic at Randall's Elmhurst facility while employed by a temporary agency, Sure Staff. At the time Viti was terminated, he had the least seniority of any Randall employee.

---

[1] The Statement of Undisputed Facts is drawn from plaintiffs' and defendants' 56.1(a) statements of undisputed facts, 56.1(b) responses to statements of undisputed facts, statements of additional undisputed facts, and responses thereto.

On March 26, 2002, Local 150, on behalf of Pease and Viti, filed unfair labor practice charges with the NLRB against Randall alleging that Randall had unlawfully terminated these plaintiffs because of their support for Local 150. The NLRB Regional Director, after investigation, dismissed Pease's and Viti's charges. Finally, on July 12, 2002, a hearing was heard before an NLRB hearing officer in a representation proceeding challenging an election at Randall and the ballots of four employees, including Pease and Viti. After hearing testimony and reviewing the exhibits introduced by Local 150 and Randall, the hearing officer found that these plaintiffs were terminated because of a serious downturn in Randall's business. On October 10, 2002, the NLRB adopted the hearing officer's findings and determinations.

Plaintiff William Berge was a truck driver at Randall's Portage facility from August 30, 2001, to May 15, 2002, when he was terminated. After termination, Berge filed several grievances against Randall alleging that it had violated its labor contract with Local 707. On August 23, 2002 (amended on September 5, 2002), Local 150, on behalf of Berge, filed an unfair labor practice charge with the NLRB alleging that Randall decreased Berge's work hours because of his support for Local 150. After investigation, the NLRB Regional Director dismissed the charge.

Plaintiff Mike Gear also worked as a truck driver at Randall's Portage facility. On April 15, 2002, Gear worked half a day and then left work. Gear claims he was injured at work and went to a medical clinic. Gear did not fill out an injury report, provide Randall with a doctor's note, or file a workers' compensation claim. The CBA requires employees to be paid for a minimum of thirty-two hours of work per week. (Randall's 56.1 Stmt. as to Gear, Ex. C at 7, Art. VI, Sect. 2.) However, the CBA goes on to state that an employee forfeits his weekly minimum guarantee if he takes off work on his own initiative. (Randall's 56.1 Stmt. as to Gear, Ex. C at 7, Art. VI, Sect. 3.)

3

On August 23, 2002 (amended on September 5, 2002), Local 150, on Gear's behalf, filed an unfair labor practice charge with the NLRB alleging that Randall refused to pay Gear his contractually-guaranteed thirty-two hours of work per week because of his support for Local 150. After investigation, the NLRB Regional Director dismissed the charge.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovants must be believed and all justifiable inferences must be drawn in the nonmovants' favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

Plaintiffs advance what is referred to as a hybrid suit because it is comprised of two causes of action that, as the Supreme Court has stated, are "inextricably interdependent." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983). According to the Supreme Court, "[t]o prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." Id. at 165. In other words, to maintain a § 301 claim against Randall, plaintiffs must establish that Local 707 breached its duty of fair representation. McLeod v. Arrow Marine Transp., Inc., 258 F.3d 608, 613 (7th Cir. 2001). "A union breaches its duty to fairly represent its members where its conduct toward one of its members is 'arbitrary, discriminatory, or in bad faith.'" Id. (quoting Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1243 (7th Cir. 1997)).

I. Plaintiffs' Motion for Summary Judgment

　A. As to Plaintiffs' Claims

As discussed above, to prevail against either Randall or Local 707, plaintiffs must prove two elements: (1) that Local 707 breached its duty of fair representation by treating plaintiffs in an arbitrary or discriminatory manner or in bad faith; and (2) that Randall violated the CBA. Viewing the evidence in the light most favorable to defendants, as this court must, it is evident that material facts exist as to the first element of plaintiffs' claims, i.e., whether Local 707 breached its duty of fair representation. Basically, each plaintiff argues that although Local 707's leadership admitted that Local 707 had an obligation to fully, fairly, and thoroughly investigate all potential grievances, gather facts, and make an objective determination as to whether or not to pursue a grievance, Local 707 failed in practice to do these things. Plaintiffs allege that Local 707 simply took Randall's

5

management's word as to the merits of plaintiffs' grievances and failed to question management or investigate the grievances or management's reasons for denying them. Plaintiffs also claim that Local 707 refused to help plaintiffs draft or revise grievances, formulate theories, or assist them in any way. Additionally, plaintiffs assert than any assistance rendered was perfunctory and cursory. Further, plaintiffs allege that Local 707 failed to train its agents on how to properly handle grievances. Finally, plaintiffs argue that Local 707 failed to adequately represent plaintiffs in bad faith due to plaintiffs' support for Local 150.

Even a cursory review defendants' 56.1(b) responses shows that defendants, and Local 707 more specifically, dispute each of plaintiffs' allegations.[2] Local 707 points to evidence in the record establishing that its union officials did assist plaintiffs in filing, investigating, and pursuing grievances. Local 707 further contends that some or all plaintiffs failed to follow the proper grievance procedures or directions of Local 707 officials. Finally, defendant union denies taking management's word over plaintiffs' and argues that it had no duty to pursue grievances on behalf of Viti. Clearly, material facts are in dispute. Believing defendants' version of the facts, no finder of fact could determine that Local 707 breached its duty of fair representation. Consequently, plaintiffs' motion for summary judgment is denied. Because material facts are in dispute as to Local

---

[2] In responding to plaintiffs' motion, both the Randall defendants and Local 707 complained of difficulty in addressing plaintiffs' 56.1(a) statement of undisputed facts. After reviewing plaintiffs' 56.1(a) statement, this court agrees that plaintiffs' paragraphs are not "short," with some paragraphs running close to one full page. Not only has this made it difficult for defendants to respond, but plaintiffs' 56.1(a) statement has unnecessarily complicated and convoluted the record for this court. However, this court believes that plaintiffs' transgression of the Local Rules is not so egregious as to warrant this court to strike the statement as defendants have requested but admonishes plaintiffs' counsel to comply fully with the Local Rules in the future in this case.

707's beach of its duty of fair representation and plaintiffs must prove such breach to prevail against Randall, this court need not discuss plaintiffs' evidence of Randall's breach of the CBA.

B. As to Randall's Affirmative Defenses

Plaintiffs also move for summary judgment on several of defendant Randall's affirmative defenses. In its memorandum in opposition, Randall did not respond directly to any of plaintiffs' arguments regarding affirmative defenses. First, plaintiffs claim they are entitled to summary judgment on Randall's second (failure to exhaust administrative remedies), fifth (no jurisdiction), and sixth (administrative res judicata) affirmative defenses. As this court ruled in its January 10, 2003, memorandum opinion and order regarding defendants' motion to dismiss, this court does have subject matter jurisdiction over plaintiffs' claims. In addition, as will be explained below, plaintiffs' claims are not barred under the doctrine of administrative res judicata. Moreover, Randall fails to develop any record with respect to the failure to exhaust administrative remedies defense. Consequently, plaintiffs are entitled to summary judgment on Randall's second, fifth, and sixth affirmative defenses. Second, plaintiffs move for summary judgment on Randall's third affirmative defense (mitigation of damages). Looking at the parties' 56.1 statements, it appears that plaintiffs either have obtained other employment or the mitigation doctrine is inapplicable. However, it is not clear, because the parties have not addressed the issue, whether plaintiffs' mitigation was adequate under the law. Thus, summary judgment must be denied, and this issue will be addressed at trial. Third, plaintiffs argue that ERISA does not preempt Pease's[3] and Berge's claims as alleged in Randall's fourth affirmative defense. Randall has not addressed this issue in any of its filings. The

---

[3] As will be discussed in the text below, Pease has not stated a claim that Randall improperly failed to make contributions to the severance fund.

7

court, therefore, finds that Randall has abandoned this defense. Accordingly, summary judgment is granted as to Randall's fourth affirmative defense.[4]

II. Defendants' Motion for Summary Judgment

A. Local 707's Breach of Its Duty of Fair Representation as to Pease, Berge, and Gear

As discussed above with respect to plaintiffs' motion for summary judgment, material facts are in dispute as to Local 707's breach of its duty of fair representation. Viewing the facts in the light most favorable to plaintiffs, defendants are not entitled to judgment as a matter of law as to plaintiffs Pease, Berge, and Gear with respect to Local 707's alleged breach of its duty of fair representation.[5] Although courts are extremely deferential to a union's decisions in handling grievances, McKelvin v. E.J. Brach Corp., 124 F.3d 864, 868 (7th Cir. 1997) (stating that union's position must be "irrational"), a reasonable factfinder could find that Local 707's actions were arbitrary or taken in bad faith. Such a determination, however, does not preclude summary judgment for defendants. Plaintiffs' claims will fail if plaintiffs cannot establish that Randall breached the CBA.

---

[4] It seems, as is discussed in the opinion below, that Berge's claim with respect to severance fund payments is moot anyway.

[5] As will be explained in the text below, disputed material facts remain only as to plaintiffs Pease, Berge, and Gear. The undisputed facts show that Local 707 did not breach its duty of fair representation as to Viti, and as such, as will be detailed below, defendants are entitled to summary judgment with respect to Viti.

8

B. Randall's Breach of the CBA

Defendants[6] contend two independent bases entitle them to summary judgment even without analyzing the individual circumstances of each plaintiff. First, defendants claim that this court must, pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), give deference to the Regional Director's determination to dismiss plaintiffs' unfair labor practice charges. Second, defendants maintain that Pease's and Viti's claims are barred under the doctrine of administrative res judicata (or administrative collateral estoppel).

Defendants concede that the Seventh Circuit has held that a decision by the General Counsel to not issue a complaint does not bar a subsequent lawsuit under the doctrine of collateral estoppel. Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO, 739 F.2d 1159, 1166 (7th Cir. 1984). Defendants argue that Chevron counsels that this court must give deference to the Regional Council's determination. Under the facts presented here, this court disagrees. Chevron addresses the issue of what deference is given to an administrative interpretation of a statute when a statute itself is silent or ambiguous with respect to the specific issue at hand. Chevron, 467 U.S. at 482-83. The holding of Chevron does not apply to a discretionary decision made by one employee of the administrative agency. However, this is really beside the point. Even if this court was to defer to the Regional Counsel's decision, if material facts are in dispute, summary judgment must be denied.

---

[6] Local 707 has adopted Randall's four separate motions for summary judgment, one against each plaintiff. With respect to Pease, Viti, and Berge, Randall filed a revised memorandum in support of each of its respective motions. This court has considered these revised memoranda, not the originally filed memoranda, in deciding each of the three respective motions.

As to defendants' second argument, the Seventh Circuit has held that if an action was properly before an administrative agency, the agency's decision will be given collateral estoppel effect if "'the same disputed issues of fact were before [the administrative agency] as are before the court, . . . the agency acted in a judicial capacity and . . . the parties had an adequate opportunity to litigate the issues before the agency.'" Frye v. United Steel Workers of Am., 767 F.2d 1216, 1220 (7th Cir. 1985) (quoting Lightsey v. Harding, Dahm & Co., Inc., 623 F.2d 1219, 1221 (7th Cir. 1980)). In the case at hand, Local 150 challenged an election at the Randall Industries shop in Elmhurst. The primary issue before the NLRB hearing officer was whether Pease and Viti were terminated (and therefore ineligible to vote) or laid off with a reasonable expectation of returning to work in the near future (and therefore eligible to vote). The hearing officer determined that Pease and Viti were terminated due to a severe downturn in Randall's business and thus ineligible to vote in the election. Defendants argue that such determination that Pease and Viti were terminated for business reasons precludes Pease's and Viti's claims that they were unlawfully terminated for supporting Local 150.

This court disagrees with defendants. The issues before the hearing officer and this court are not identical. Although the hearing officer mentioned the fact that Pease and Viti had filed an unfair labor practice charge against Randall, she did not address the issue of unlawful termination. The exclusive purpose of the hearing was to determine the eligibility of certain voters. In other words, the officer was to find whether Pease and Viti were terminated or laid off, not whether either was terminated lawfully or unlawfully. Defendants presumably are correct that if the hearing officer would have found that Pease and Viti were discriminatorily discharged their ballots would have counted. However, there is no evidence that this issue was considered by the hearing officer or

10

whether she even would have entertained such evidence. In fact, she commented that the unfair labor practice charges had been dismissed and therefore did not address them. (Randall's 56.1 Stmt. as to Pease, Ex. D7 at 5.) In addition, the NLRB considers representation proceedings non-adversarial. (NLRB Casehandling Manual § 11422 ("[The hearing] is investigatory and nonadversarial.").[7]) Accordingly, because the issues before the hearing officer were not the same as before this court (and more importantly, because no unfair labor practice hearing was consolidated with the representation proceeding, apparently could not have been raised before the hearing officer) and the representation proceeding was non-adversarial, collateral estoppel does not apply to bar Pease's and Viti's claims.[8]

Defendants assert that even if this court rejects its arguments above, as this court has, it is still entitled to summary judgment with respect to each plaintiff because Randall has not breached the CBA. This court will now address each plaintiff in turn.

1. Plaintiff Christopher Pease

As an initial matter, this court must clarify what claim is pending before this court. Pease contends that he has alleged more than just a claim for unlawful termination in violation of

---

[7] Unfortunately, Pease cites to sections 11181 and 11188 of the NLRB Casehandling Manual. (Pls.' Consol. Mem. in Opp'n at 4, 5.) It appears that Pease's counsel were attempting to mislead this court, or alternatively were extremely careless in their diligence, as these sections very clearly deal with pre-election hearings, not post-election challenges. This court, through its own research, found section 11422, which appears to apply in this case because Pease's and Viti's unfair labor practice charges and election challenges were not consolidated.

[8] The case defendants cite in support of their position, Florian v. Sequa Corp., 2001 WL 1002504 (N.D. Ill. Aug. 29, 2001), is inapposite. In that case, the court found that a hearing officer's determination in an *unfair labor practice proceeding* bars a subsequent claim based on the same issues. The case at hand deals with a representation proceeding where, as discussed in the text above, the purpose of such hearing is different from an unfair labor practice proceeding.

11

the CBA, which is set forth in paragraph 17 of the first amended complaint. In paragraph 18, plaintiff lists several grievances he filed or requested Local 707 to file on his behalf. However, Pease makes no allegations that Randall breached the CBA with respect to these grievances. It is clear from the first amended complaint that paragraph 18 applies to Local 707 only. With respect to Randall, paragraph 18 is surplusage. This reading of the first amended complaint is buttressed by comparing Pease's claims with Berge's. In paragraph 33 of the first amended complaint, Berge lists several grievances that he either filed or requested to be filed. However, unlike Pease, in addition to his unlawful termination allegation in paragraph 39, Berge goes on to state in paragraph 40 that Randall violated the CBA by denying the grievances specified in paragraph 33. Although a notice pleading is all that is required in federal court, Pease's allegations fail to put Randall on notice of any claim other than unlawful termination. Pease does not allege in any way that Randall breached the CBA with respect to any of the grievances listed in paragraph 18 of the first amended complaint.

One other matter deserves brief mention. Pease is not challenging Arbitrator Stoia's decision; rather, he is claiming Local 707 breached its duty of fair representation in presenting his grievances to the arbitrator. As stated above, material issues of fact remain as to whether Local 707 breached its duty to Pease.

In considering Pease's unlawful termination claim, viewing the facts in the light most favorable to him, defendants are not entitled to judgment as a matter of law. A reasonable factfinder could find that Pease was terminated because of his open support of Local 150. To prevail on this claim, Pease must show that antiunion animus was a "substantial or motivating factor" in Randall's decision to terminate him. Huck Store Fixture Co. v. NLRB, 327 F.3d 528, 533 (7th Cir. 2003). "Antiunion animus is established by showing that the employees were engaged in union activities,

that the employer knew of and harbored animus toward the union activities, and there was a causal connection between the animus and the implementation of the adverse employment action." Id. If Pease makes this showing, Randall may avoid liability by establishing that it would have terminated Pease regardless of his support for Local 150. Id. If a factfinder finds that either Randall's reason did not exist or that Randall did not actually rely on that reason, it would find in favor of Pease. Id.

In the case at hand, Pease openly supported Local 150. (Pls.' 56.1 Stmt. ¶ 15.) Shortly after such open support, Randall terminated Pease. Although suspicious timing alone may not be enough, it can be inferred based on the small size of Randall[9] that Randall knew of Pease's support of Local 150. See D& D Distribution Co. v. NLRB, 801 F.2d 636, 641 (3d Cir. 1986); NLRB v. Health Care Logistics, Inc., 784 F.2d 232, 236 (6th Cir. 1986). This court finds that based on Randall's relatively small size and the timing of Pease's termination, along with the other disputed evidence, such as whether Randall was actually facing a business downturn, whether Randall allowed a mechanic, and less senior driver, Colin Paul, to take over Pease's driving duties, and whether Randall failed to assist Pease in obtaining his CDLA license after promising to do so, a reasonable factfinder could decide that Pease's open support of Local 150 caused Randall to terminate him. Moreover, a factfinder could reject Randall's explanation of business necessity. Consequently, defendants' motion for summary judgment as to Pease is denied.

2. Plaintiff Vinci Viti

In this court's January 10, 2003, memorandum opinion and order regarding defendants' motion to dismiss, this court dismissed with prejudice Viti's claims that Randall or

---

[9] This court was not able to find in the multiple 56.1 materials the exact number of employees at Randall. From Local 150's election challenge, the hearing officer reports that 13 employees were part of the bargaining unit. (Randall's 56.1 Stmt. as to Pease, Ex. D7 at 2.)

13

Local 707 violated the CBA by not filing or allowing him to file a grievance on his behalf. By any plain reading of Count II of plaintiffs' first amended complaint, Viti has pled himself out of court. Article II, Section 5 of the CBA states that "[a] new employee shall be on probation for the first ninety (90) days of employment. During that time, his discharge shall not be subject to the grievance procedure, Article X." (Pls.' Consol. 56.1 Resp., Ex. 1 at 2.) The first amended complaint alleges that Randall hired Viti in December 2001 and terminated him on or about February 22, 2002. (First Am. Compl. ¶¶ 25, 26.) Viti attempts to get around this judicial admission by arguing in his response to defendants' summary judgment motion that he worked at Randall for more than ninety days prior to February 22, 2002, when he was employed by a temporary agency, Sure Staff. However, Viti cannot use his memoranda to amend his first amended complaint. Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002). Even if this court did allow Viti to advance the claim with evidence of his employment with the temporary agency, Viti has not introduced sufficient evidence to withstand summary judgment.

Viti argues that Sure Staff and Randall should be treated as joint employers and cites to two cases in support, NLRB v. Western Temp. Servs., Inc., 821 F.2d 1258 (7th Cir. 1987) and Lutheran Welfare Servs. of Ill. v. NLRB, 607 F.2d 777 (7th Cir. 1979). Viti fails to explain how Randall and Sure Staff are joint employers. Just a cursory glance at the case law to which Viti cites shows that the key to such analysis is whether both Randall and Sure Staff exerted significant control over the same employees, including Viti. Western Temp. Servs., 821 F.2d at 1266; Lutheran Welfare Servs., 607 F.2d at 778. Viti has failed to point to any evidence in the record establishing the extent of control Randall or Sure Staff exerted over employees. Without such evidence, this court cannot

determine whether they were in fact joint employers.[10] Therefore, because Viti has not directed this court to any evidence in the record to dispute that Viti worked at Randall less than ninety days and thus had no grievance rights, this fact becomes undisputed.

Because Viti had no right to the formal grievance mechanism, Local 707 could not have breached any duty of fair representation as to Viti. As explained above, Viti must establish both a breach of Local 707's duty of fair representation and Randall's breach of the CBA to succeed on his hybrid § 301 claim. With no breach of Local 707's duty of fair representation, Viti's claim must fail. Consequently, defendants' motion for summary judgment as to Viti is granted. Viti is correct that Randall cannot violate labor laws, including termination for supporting a rival union. However, such an unfair labor practice charge must be brought before the NLRB, which in Viti's case it was and was dismissed. Because Viti had no right under the CBA to have Local 707 grieve this complaint to arbitration, he cannot succeed on his hybrid § 301 claim. See DelCostello, 462 U.S. at 163-65.

### 3. Plaintiff Willard Berge

Berge's primary claim is that Randall violated the CBA by terminating him instead of Roy Walker ("Walker") and by assigning Walker to drive Berge's truck. Berge claims that Walker had less seniority than him and therefore, pursuant to Article XIII of the CBA, should have been laid off or terminated first. (Randall's 56.1 Stmt. as to Berge, Ex. C at 13.) The bottom line is that the parties dispute who had more seniority at Randall, Berge, Walker, or Gear, and who was in what bargaining unit position. At this summary judgment stage of this litigation, this court cannot decide such factual disputes. Randall is correct that it had the power under the CBA to determine

---

[10] Viti's argument that the single employer doctrine applies is frivolous. Viti has pointed to no evidence in the record to established that Randall and Sure Staff "are actually part of a single integrated enterprise . . . ." Western Temp. Servs., 821 F.2d at 1266.

the size of its workforce under the CBA's management right's clause (Randall's 56.1 Stmt. as to Berge, Ex. C at 16, Art. XXIII.); however, Randall was still obligated to reduce its workforce pursuant to the seniority provisions of the CBA. Berge claims Randall did not do so, and Randall claims it did. Such a dispute of material fact precludes summary judgment.

In addition, as with Pease, material facts remain in dispute as to whether Berge was terminated for his support of Local 150. It is undisputed that Berge openly supported Local 150 and Randall knew this. (Randall's 56.1 Resp. ¶ 15.) Based upon the timing of Berge's termination, a decrease in Berge's hours, and the transfer of an allegedly less senior employee, Walker, to a driving position, a factfinder could find that Berge was unlawfully terminated because of his support for Local 150 as opposed to terminated because of a downturn in Randall's business. Therefore, summary judgment as to Berge is denied on this claim.

Summary judgment must also be denied on Berge's remaining claim that his hours were decreased in violation of the CBA. Article VI, Section 1 of the CBA provides merely that Randall will pay its employees for a minimum of thirty-two hours of work each week. (Randall's 56.1 Stmt. as to Berge, Ex. C at 7.) As long as Randall does not decrease Berge's hours for an unlawful reason, nothing in the CBA prohibits Randall from decreasing his hours, so long as Berge is paid for thirty-hours of work per week. However, material facts are in dispute as to whether Randall reduced Berge's hours because of Berge's support of Local 150, which is prohibited by federal law and the CBA. (Randall's 56.1 Stmt. as to Berge, Ex. C at 13, Art. XV.)[11]

---

[11] Apparently, Berge's claims regarding his weekly minimum hour guarantee and severance fund contributions have been resolved and are now moot. (Pls.' Consol. Mem. in Opp'n at 9 n.6.)

16

4. Plaintiff Mike Gear

Gear's only claim pending before this court is that he was not paid his contractually-guaranteed thirty-two hours in one week. Gear argues that he has also alleged a claim that Randall failed to pay him the contractually-guaranteed four hours per day. This claim is nowhere to be found in the first amended complaint. Gear failed to put Randall on notice of such claim. In addition, as explained above, a brief in opposition to a motion for summary judgment may not amend the complaint. Grayson, 308 F.3d at 817.

Gear asserts that his absence from work was due to a work-related injury. Randall argues that Gear left on his own initiative and did not follow proper procedures in documenting his alleged injury. It seems clear from the parties' papers that a work-related injury would not preclude Gear from receiving the minimum number of hours due under the CBA. Morever, Randall does not point to any evidence in the record which establishes that Gear was contractually required to follow a specific procedure in documenting his time off from work.[12] What is before this court is Gear's word that he left work because of a work-related injury and Randall's word that Gear left on his own initiative and never proved he was injured at work. Again, such a dispute of material fact, even

---

[12] Randall cites to Charles Truckenbrodt's deposition for the proposition that "Randall typically pays employees who leave work for a work related injury provided they inform the company of their situation prior to leaving work." (Randall's Mem. as to Berge at 7.) Unfortunately, deposition pages 46-47 are not included as part of Randall's exhibits as to Gear. This court cannot look to the deposition to determine if such a "policy" was made known to employees such as Gear. In addition, as Randall does throughout its materials submitted to this court, Randall cites directly to the record in its memorandum. This is improper. Parties are to cite to their 56.1 statements of facts, which in turn cite directly to the record. Malec v. Sanford, 191 F.R.D. 581, 586 (N.D. Ill. 2000). Similar to what Judge Castillo pointed out in Malec, Randall not only cites directly to the record but cites to a part of the record not included in its 56.1(a) statement of undisputed facts. Here, Randall's 56.1 statement as to Gear says nothing about a Randall policy requiring employees to inform Randall of work-related injuries prior to leaving work. Consequently, such a "fact" as it may be cannot be taken as undisputed.

when it appears only a few hours of pay are involved, cannot be decided on summary judgment. Thus, defendants' motion for summary judgment is denied on Gear's claim.

## CONCLUSION

For all of the reasons stated above, plaintiffs' motion for summary judgment is granted as to Randall's affirmative defenses two, four, five, and six. Plaintiffs' motion for summary judgment is denied in all other respects. Defendants' motion for summary judgment is denied as to the claims raised by Pease, Berge, and Gear. Defendants' motion for summary judgment is granted as to Viti. All claims brought by plaintiff Viti are dismissed. All previously set dates stand. The parties are strongly encouraged to discuss settlement.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: November 7, 2003