# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6756 | **DATE** | March 12, 2004 |
| **CASE TITLE** | PEASE et al vs. PRODUCTION WORKERS LOCAL 707 et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motions for judgment as a matter of law are granted. Judgment is entered in favor of defendants Randall Industries, Inc, Randall Rents, and Production Workers Union of Chicago and Vicinity Local 707 and against plaintiff Berge. Pursuant to Rule 50(c)(1), because the dispositive facts are uncontroverted and the verdict was against the clear weight of the evidence, defendants' alternative requests for a new trial are conditionally granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | MAR 15 2004 date docketed | |
| | Docketing to mail notices. | | 192 |
| | Mail AO 450 form. | MAR 15 2004 docketing deputy initials | |
| | Copy to judge/magistrate judge. | 3-12-04 date mailed notice | |
| JS6 | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christopher Pease, Willard Berge, and )
Mike Gear, )
)
Plaintiffs, )
)
v. ) No. 02 C 6756
)
Production Workers Union of Chicago )
and Vicinity Local 707, Randall Industries, Inc., )
and Randall Rents of Indiana, )
)
Defendants. )
)

DOCKETED
MAR 1 5 2004

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 15, 2004, a jury returned a verdict in favor of plaintiff Willard Berge ("Berge") and against defendants Randall Industries, Inc. and Randall Rents of Indiana (collectively "Randall") and Production Workers Union of Chicago and Vicinity Local 707 ("Local 707") on his claim that Randall violated the seniority provisions of the collective bargaining agreement ("CBA") by terminating him instead of another employee with less job classification seniority and that Local 707 breached its duty of fair representation. By special verdict, the jury found that Randall had violated the seniority provisions of the CBA and that Local 707 had acted in bad faith in failing to represent Berge. (Berge Claim One Verdict Form.) The jury awarded Berge $9,061.76 in damages, allocated evenly between Randall and Local 707. (Berge Damages Verdict Form at 2.) In addition, the jury returned a verdict in favor of defendants on Berge's claim that Randall terminated its employment

1

of him because of his support for International Union of Operating Engineers, Local 150 ("Local 150") in violation of the CBA and that Local 707 breached its duty of fair representation. The jury also found in favor of defendants with respect to each of the claims of plaintiffs Christopher Pease ("Pease") and Mike Gear ("Gear"). On January 26, 2004, Local 707 filed a renewed motion for judgment as a matter of law and alternative request for a new trial. On January 27, 2004, Randall filed a similar motion. For the following reasons, the motions for judgment as a matter of law are granted.

## STATEMENT OF FACTS[1]

Berge worked as a truck driver at the Randall Rents facility in Portage, Indiana from about August 30, 2001, to May 15, 2002. At that time, Roy Walker ("Walker") and Gear were truck drivers with greater seniority than Berge. All three of these Randall employees, Berge, Gear, and Walker, were covered by the CBA between Randall and Local 707. After training Berge, in October 2001, Walker moved to the rental coordinator position at Randall, a non-bargaining unit position. (Tr. at 596, 646-47.) In May 2002, Randall moved Walker back to the bargaining unit truck driver position and terminated Berge. (Tr. at 489, 596.)

Berge then filed a grievance claiming that Randall violated Article XIII of the CBA when it terminated him instead of Roy Walker. The grievance did not proceed to arbitration. The evidence at trial showed that Local 707 did not assist Berge in writing his grievance (Tr. at 427-28) and that Berge was mocked and called "Mr. 150" (Tr. at 358).

---

[1] The Statement of Facts is derived from the evidence presented at trial. Trial transcript page citations have been provided herein.

In effect from June 1, 1999, through May 31, 2002, the CBA between Randall and Local 707 contained the following provision, in relevant part, regarding seniority:

### ARTICLE XIII – SENIORITY & BIDS
Job classification seniority will operate for all promotions, layoffs, re-employment, the selection of shifts, overtime work and vacation, provided that the individual can perform the available job in a reasonably satisfactory manner. An employee loses all seniority after having been laid off for twelve (12) consecutive months.

The CBA did not include a zipper clause or other similar provision that would limit the parties' ability to modify or amend the CBA. Moreover, the CBA did not contain an integration clause limiting the CBA to its express, written terms.

The evidence at trial established that Walker approached Randall about moving to a sales position at Randall. (Tr. at 569, 646.) After discussing the matter, the parties agreed that Walker would move into the rental coordinator position, a non-bargaining unit position. (Tr. at 646-47.) Kerry Orrock, the manager at Randall Rents of Indiana, testified that upon moving to the new position, "the situation was that if it didn't work out for the company or [Walker] didn't like it, he could always go back to being a driver." (Tr. at 647.) In addition, Randy Truckenbrodt, the owner of Randall Industries, testified that it was the practice at Randall to allow an employee the opportunity to return to a prior position after accepting a new position. (Tr. at 491-92.) When Walker was transferred to the rental coordinator position, he was not covered by the CBA. (Tr. at 435, 596, 651.) In addition, during his time as rental coordinator, union dues were not withheld from Walker's paycheck. (Tr. at 597-98.)

Furthermore, Chuck Truckenbrodt ("C. Truckenbrodt"), Randall's day-to-day administrative officer, prior to transferring Walker to the non-bargaining unit rental coordinator position, spoke

3

with Local 707 business agent and organizer Edgar Roman ("Roman") regarding the impact of such a transfer on Walker's seniority. (Tr. at 570, 635-36.) C. Truckenbrodt testified that Roman said, regarding the transfer, that "we treat it the same way we treat a layoff. You're away from your work for up to a year, you get to retain your – as if it was a layoff. You're not available for your work now, and you retain your seniority if you go back, just as if you were called back." (Tr. at 635-36.) Based on this conversation with Roman, when Walker returned to the driver position in May 2002, Randall and Local 707 concluded that Walker had retained his seniority within the driver job classification because he had been in the rental coordinator position for less than one year. As such, in May 2002, when Walker returned to the truck driver position, he was more senior than Berge. At that time, Randall needed only two truck drivers, and of the three truck drivers, Berge, Gear, and Walker, Berge was the least senior driver. Consequently, Randall terminated Berge.

Randall argues in its renewed motion for judgment as a matter of law that the jury's verdict was contrary to the undisputed evidence that Walker was laid off within the meaning of the CBA and therefore retained his seniority within the truck driver job classification. Local 707 contends that the evidence does not support the jury's finding of bad faith. These arguments will be addressed below.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 50, this court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . . ." FED. R. CIV. P. 50(a)(1). As the Supreme Court has made clear, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted). Thus, this court

should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, here Berge. Moreover, this court may not make credibility determinations or weigh the evidence. Id. Finally, and particularly important in this case, this "court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151 (citation omitted). In interpreting this directive from the Supreme Court in Reeves, the Seventh Circuit has held that the uncontroverted testimony of a company employee must be given credence. Traylor v. Brown, 295 F.3d 783, 791 (7th Cir. 2002). The court pointed out that to hold otherwise "would essentially prevent any employer from prevailing at the summary judgment [or judgment as a matter of law] stage because an employer will almost always have to rely on the testimony of one of its agents to explain why the agent took the disputed action." Id.

## ANALYSIS

Berge, along with the other plaintiffs, filed what is commonly known as a hybrid suit against the defendants. As the Supreme Court has held, "[t]o prevail against either the company or the Union, . . . [Berge] must not only show that [his] discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983). In other words, to prevail on his hybrid claim, Berge must prove by a preponderance of the evidence that Randall breached the CBA and that Local 707 breached its duty of fair representation. McLeod v. Arrow Marine Transp., Inc., 258 F.3d 608, 613 (7th Cir. 2001). A union breaches the duty of fair representation only if its actions are arbitrary, discriminatory, or in bad faith. Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 369 (7th Cir. 2003).

5

In addition, the Seventh Circuit has made clear that "[e]ach of these possibilities must be considered separately in determining whether or not a breach has been established." Id.

I.    Breach of the CBA

Before moving Walker into the rental coordinator position, the undisputed evidence established that Randall's administrative officer C. Truckenbrodt talked with Local 707's business agent Roman to determine what effect the move would have on Walker's seniority. (Tr. at 570, 635-36.) Just prior to the transfer, Walker was the most senior driver at Randall Rents of Indiana. C. Truckenbrodt testified that it was Randall's and Local 707's policy that a bargaining unit member who laterals into a non-bargaining unit position does not lose his or her seniority; rather, the employee's seniority is preserved should he or she transfer back into the collective bargaining unit. (Tr. at 635.) More importantly, Roman told C. Truckenbrodt that Local 707 treats such a transfer as a layoff. (Tr. at 635-36.) Under the terms of the CBA, an employee loses his or her seniority after having been laid off for twelve consecutive months, and therefore, retains his or her seniority during the first twelve months of a layoff. (CBA, Art. XIII.) In other words, the undisputed trial evidence established that Randall and Local 707 had agreed that the term "laid off" included a transfer, like in Walker's situation, to a non-bargaining unit position.[2] Consequently, for the first twelve months of the transfer, as with a layoff, the laid off employee retains his or her seniority rights.[3]

---

[2] The Seventh Circuit has held that "a collective bargaining agreement may be partly or wholly oral as well as partly or wholly in writing, and a written collective bargaining agreement may be orally modified." Merk v. Jewel Food Stores Div. of Jewel Cos., Inc., 945 F.2d 889, 895 (7th Cir. 1991). Here, although not explicitly written, the undisputed evidence is clear that Randall and Local 707 had agreed that transfers to non-bargaining unit positions were treated as layoffs.

[3] Berge argues that because Randall did not fully address its position with respect to transfer and seniority rights, including the conversation between C. Truckenbrodt and Roman, in

6

This agreement to treat an employee transferred to a position outside the bargaining unit as a laid off employee is consistent with the principles of labor law and the past practices of Randall and Local 707. Local 707 owes each of its members of a duty of fair representation. It must take into account the rights and interests of each of its members and of the membership as a whole. Local 707's position with respect to layoffs applies uniformly to all Local 707 members. Local 707 trustee Susan Schreiner testified that Local 707 did not believe that Walker lost his seniority when he moved into the rental coordinator position because "[t]he union wants a member to be able to advance without the risk of being terminated by doing so. The union wants the seniority to follow so that in the event a position does not work out, the member is not out of a job." (Tr. at 737-38.) Such a policy was not created specially for Walker. If Berge would have transferred to a non-bargaining unit position, Randall and Local 707, pursuant to the CBA, would have treated such a move as a layoff. Consequently, if Berge would have returned to the bargaining unit within the first twelve months, he would have retained his seniority rights. In fact, when Berge's co-plaintiff Pease moved out of his bargaining unit position for less than twelve months, Randall continued to treat his seniority date as his date of hire, August 14, 2000, not the date he returned or moved to the bargaining unit. (Tr. at 29, 34-35, 147, 491-92; Def. Randall Tr. Ex. 41.)

---

its trial brief, it is precluded from doing so in its renewed motion for judgment as a matter of law. Berge's sole authority for this is a reference to the form pre-trial order included with this district's Standing Order Establishing Pretrial Procedure. Endnote 10 to the form pre-trial order states that "[t]rial briefs are intended to provide full and complete disclosure of the parties' respective theories of the case." Nothing supports Berge's argument that a party's failure to include a position in the trial brief precludes that party from ever advancing such a position at a later time. In addition, Berge cannot claim that he was surprised by Randall's contention, as Randall stated in the Final Pre-trial Order that a contested issue of fact concerned whether Walker retained his seniority when he returned to his previous job classification within twelve months. (Final Pre-trial Order, Sch. A, Def. Randall's Stmt. of Contested Facts ¶ 20.) Thus, this court is not prevented from considering Randall's arguments.

The testimony of C. Truckenbrodt on this issue was undisputed at trial. Berge's counsel did not address the parties' interpretation of "laid off" during the cross-examination or re-cross-examination of C. Truckenbrodt or during his direct examination of Roman. Thus, C. Truckenbrodt's testimony must be given credence. Traylor, 295 F.3d at 791. Even if Berge had been surprised by C. Truckenbrodt's testimony on this point during Randall's case-in-chief, Berge could have called Roman as a rebuttal witness and disputed C. Truckenbrodt's testimony. Moreover, Berge's counsel did not address the issue of Randall and Local 707's understanding of "laid off" in his initial closing argument. In his rebuttal argument, however, Berge's counsel made his only attack at trial on the issue of whether an agreement between Randall and Local 707 regarding layoffs and transfers ever took place. Berge's counsel argued:

> [Local 707] didn't say that we had a deal with the company. The company says we had a deal.
> Where was the 707 witnesses? Where was – the agreements take two parties. There's two sides that have to agree. What 707 witness said, "We agreed to let Walker come back. We had a previous deal that agreed to let him come back"? Where was that testimony?
> Where was Mr. Walker? He's the guy who supposedly was the beneficiary of this. He's the one who supposedly would know about this agreement. He didn't testify either.
> I mean, this is all holes.

(Tr. at 862-63.) It was misleading for Berge's counsel to argue that somehow Randall had failed at its obligation to present sufficient evidence on this issue when in fact the only evidence presented at trial pointed undisputably in favor of Randall and had never been questioned by Berge's counsel during the presentation of the evidence. This court believes that the above quoted rebuttal argument by Berge's counsel, which was erroneous under the facts and the law and which Randall had no

opportunity to counter, caused the jury to make the unreasonable finding it made in returning a verdict in Berge's favor.

As stated above, the evidence regarding the parties' agreement to treat a transfer as a layoff was uncontroverted. Berge's counsel's misleading statement, which told the jury that Randall had to prove more than Randall had proven, was improper rebuttal argument. Berge had never disputed the evidence on this issue. Indeed, Randall had undisputedly proved its theory by a preponderance of the evidence. Randall's proof was uncontroverted, and therefore, it had met its burden. Any argument to the contrary, or jury finding to the contrary, was unreasonable.

As the Seventh Circuit has held, "a plaintiff cannot avoid summary judgment [or judgment as a matter of law] by merely claiming a jury could disbelieve the employer's reason." Traylor 295 F.3d at 791 (holding that in a Title VII case, a plaintiff cannot defeat summary judgment by simply arguing that the jury *could* disbelieve the employer's proffered legitimate, nondiscriminatory reason). This is the precise tactic Berge's counsel used in rebuttal argument. The Supreme Court held many years ago, "the question of the credibility of witnesses is one for the jury alone; but this does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt." Chesapeake & Ohio Ry. Co. v. Martin, 283 U.S. 209, 216 (1931). In the case at hand, the jury, prompted by Berge's counsel's erroneous rebuttal argument, disregarded C. Truckenbrodt's unimpeached testimony. As a result, the verdict cannot stand and must be set aside.

Berge is correct that the jury is allowed to draw reasonable inferences supported by the record. (Resp. at 4.) However, because C. Truckenbrodt's testimony was uncontroverted by any evidence and remained undisputed when the parties rested at the close of all the evidence, Randall

9

was under no obligation to provide further corroboration of this undisputed fact or to call a Local 707 representative to the stand. The jury cannot simply disregard the undisputed evidence of C. Truckenbrodt, as Berge argued in rebuttal and still argues. Just like the rebuttal argument at trial, Berge claims in his consolidated response to defendants' renewed motions for judgment as a matter of law that "the jury was permitted to infer from the absence of any Local 707 testimony supporting Mr. Truckenbrodt's allegation that no such agreement existed. Nor did Mr. Roy Walker testify as to what had occurred between the parties concerning his seniority. Again, the jury could infer from the lack of supporting testimony that no such oral agreement had been reached." (Resp. at 5.) This is factually and legally incorrect. Once a party presents evidence as to a fact under a preponderance of the evidence standard, unless that evidence is impeached in some manner or evidence disputing that fact is presented, the fact has been proven. To find otherwise would be contrary to the Seventh Circuit's reasoning in Traylor, 295 F.3d at 791.

Berge is also incorrect that Randall and Local 707's agreement as to the scope of the term "laid off" in the CBA cannot be considered. Parol evidence is not implicated here because statements made prior or contemporaneous with the making of the contract are not at issue. Based on the undisputed evidence, it is clear that prior to transferring Walker the parties simply clarified their prior agreement. The evidence supports only one reasonable inference–i.e., that the parties had agreed that "laid off" includes having been transferred to a non-bargaining unit position. This was clearly the understanding of both Local 707 and Randall prior to Walker's transfer. In light of the unrefuted definition of "laid off" as used in the CBA, the jury was unreasonable to find for Berge. The conversation between C. Truckenbrodt and Roman merely confirmed their prior understanding.

Any finding to the contrary is not supported by the evidence and is against the undisputed manifest weight of the evidence. Such a finding must be set aside.

II. Bad Faith

In addition, the jury's finding that Local 707 acted in bad faith (Berge Claim One Verdict Form) is not supported by a legally sufficient evidentiary basis. As this court instructed the jury, without objection from either party:

> Whether or not a union's actions are in bad faith calls for a subjective inquiry and requires proof that the union acted, or failed to act, due to an improper motive. To show bad faith, plaintiffs must identify conduct by Local 707 union officials that would support a reasonable inference of bad faith on the part of Local 707. Conduct is in bad faith when it is designed to mislead someone by fraud, deceit, or dishonest action.

(Jury Instructions at 19.) At trial, Berge did not identify specific conduct that would support a reasonable inference that Local 707 attempted to mislead Berge by fraud, deceit, or dishonest action. In his consolidated response to defendants' renewed motions for judgment as a matter of law, Berge points to the following evidence to support the jury's finding of bad faith: Local 707 knew that Berge supported Local 150; Local 707 mocked Berge and called him "Mr. 150"; Local 707 failed to assist Berge in preparing or presenting his grievances; and Local 707 failed to adequately investigate Berge's grievances. (Resp. at 10-11.)

Nowhere, however, does Berge explain how any of these amount to conduct by Local 707 designed to mislead by fraud, deceit, or dishonest action. In fact, in his closing argument to the jury, Berge's counsel argued that Local 707 acted arbitrarily and discriminated against Berge, but he did not point to any evidence supporting a bad faith finding, nor did he even mention bad faith. (Tr. 794-97.) Clearly, the jury rejected the arguments regarding arbitrariness and discrimination, as it found

11

by special verdict that Local 707's representation of Berge was not arbitrary or discriminatory. (Berge Claim One Verdict Form.)

Furthermore, Berge points to no evidence supporting a finding that Local 707 subjectively acted in bad faith, as is required by the law. See Konen v. Int'l Bhd. of Teamsters, Local 200, 255 F.3d 402, 408 (7th Cir. 2001) (holding that for the non-moving party to survive summary judgment, and thus judgment as a matter of law, "he must identify conduct by union officials that would support a reasonable inference of bad faith," including the subjective motivation behind the union's decision not to arbitrate his grievance). Finally, the undisputed facts discussed in the previous section of this opinion provide the only reasonable explanation as to why Local 707 failed to pursue Berge's grievance to arbitration: Local 707 believed, based on the agreed-upon provisions of the CBA governing all bargaining unit employees, that Walker had been "laid off" and thus retained his seniority rights when he returned to the driver position. At that time, because Walker had greater seniority than Berge, Berge had no valid grievance, and Local 707 knew that pressing such a grievance to arbitration would have been meritless. See Crider v. Spectrulite Consortium, Inc., 130 F.3d 1238, 1244 (7th Cir. 1997) (finding that union did not act in bad faith when it refused to take a grievance to arbitration when, based on its reasonable interpretation of the collective bargaining agreement, it believed that the grievant's position was meritless). As this is the only reasonable explanation supported by the undisputed facts, the jury was unreasonable in finding that Local 707 acted in bad faith, and judgment as a matter of law must be entered for the defendants.

## CONCLUSION

For the reasons explained above, defendant Randall's and defendant Local 707's renewed motions for judgment as a matter of law are granted. Judgment is ordered entered in favor of defendants Randall and Local 707 and against plaintiff Berge. Pursuant to Rule 50(c)(1), because the dispositive facts are uncontroverted and the verdict was against the clear weight of the evidence, defendants' alternative requests for a new trial are conditionally granted.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: March 12, 2004

13